P1-835

FILED FOR RECORD 11/15/2021 14:36:24
Angela P. Ingraffia, DY CLERK
JEFFERSON PARISH, LA

## 24TH JUDICIAL DISTRICT COURT
## PARISH OF JEFFERSON
## STATE OF LOUISIANA

| | | |
|---|---|---|
| JENNIFER RAVAIN, INDIVIDUALLY, ) | DOCKET NO. 822-804 | |
| AND ON BEHALF OF HER MINOR CHILD, ) | | |
|  ) | | |
| ) | | |
| ) | | |
| VERSUS ) | DIVISION L | |
| ) | | |
| OCHSNER MEDICALCENTER KENNER, LLC, ) | | |
| JEFFERSON PARISH SCHOOL BOARD, AND ) | | |
| EAST JEFFERSON HIGH SCHOOL ) | JUDGE | |

*************************************************************************

### PETITION FOR DAMAGES

COMES NOW, Plaintiffs, who respectfully aver:

### PARTIES

1.

The Plaintiffs are:

JENNIFER RAVAIN, a person of the full age of majority who is a resident of Kenner, Louisiana in the Parish of Jefferson, individually, and on behalf of her minor child,

2.

Defendants are:

Ochsner Medical Center – Kenner, L.L.C., a private non-profit regional health system doing business in Jefferson Parish (hereinafter sometimes referred to as "Ochsner");

Jefferson Parish School Board, a public entity created and organized under the laws of the State of Louisiana and authorized to oversee and control all public schools within its jurisdiction; and,

East Jefferson High School (hereinafter sometimes referred to as "East Jeff"), a public school operating in Kenner, Louisiana and under the direct control of Jefferson Parish School Board.

1

**EXHIBIT 1**

## FACTS

3.

Plaintiff, ███████ 16 years of age and at all pertinent times herein attended East Jefferson High School.

4.

On the morning of October 20, 2021, ███████ was sitting in his home room class at East Jefferson High School when an "all call" went out over the PA system inviting students to go to the Ochsner mobile vaccine unit if they wanted to receive a COVID shot.

5.

After hearing the "all call", Plaintiff, ███████ left his home room and went outside to the parking lot where the Ochsner mobile unit was located. However, before approaching the mobile unit ███████ went to the East Jeff administration office to see if he needed any type of authorization, and he was advised that he would likely need one.

6.

When Plaintiff, ███████ approached the Ochsner mobile unit, he was met by two nurses who took his basic information such as name and date of birth. No medical history was taken on Plaintiff, and no vital signs were taken. Plaintiff was then given a consent form and told to sign his name where a parent of an underage child would be required to sign and to print his name and date the form. Plaintiff then asked the nurses when he would be scheduled to receive the shot as he was under the impression he was just signing up for the shot, and was only there to investigate as he wanted to discuss the issues with his mother. He was told that he would receive the shot right then and there. Being a teenager, Plaintiff did not know what to do, and the shot was immediately administered.

## SUMMARY OF ACTION

7.

Good intentions notwithstanding, Defendants are overstepping their legal, moral and ethical bounds by violating rights guaranteed by the Louisiana Constitution (La. Const. art. I, § 5), codified by statute (La. R.S. 40:1159.7) and long-recognized by the Louisiana Supreme Court. *See Hondroulis v. Schuhmacher*, 553 So. 2d 398, 414 (La. 1989) (holding that Article 1, § 5 establishes the right to decide whether to obtain or reject medical treatment); *Snider v. Louisiana Medical*

2

*Mut. Ins. Co.*, 2013-0579 (La. 12/10/13); 130 So.3d 922, 930 ("The informed consent doctrine is based on the principle that every human being of adult years and sound mind has a right to determine what shall be done to his or her own body.").

8.

It is the legal and moral responsibility of health care workers to educate individual patients regarding the potential benefits and risks of medical treatment. This responsibility is required by statute (*See* La. R.S. 40:1159.1 *et seq*, Louisiana Medical Consent Law) and rooted in the right to individual privacy under Article I, Section 5 of the Constitution of Louisiana. La. Const. art. 1, § 5.

9.

Obtaining informed consent to medical treatment is an individualized process and cannot be accomplished by generalizations or mandates. As explained by the Louisiana Supreme Court, "[w]ithout pertinent case-specific information patients would lack the capacity to reason and make judgments on their own. They would therefore be deprived of the freedom to personally decide intelligently, voluntarily and without coercion whether to undergo the recommended treatment." *Snider*, 130 So.2d at 930 n.7.

10.

In the early phase of the "novel"[1] COVID-19 pandemic, there was little information available to healthcare providers concerning virus on which to advise patients. Thus, treatment recommendations were heavily influenced by a better-safe-than-sorry approach, rather than a traditional risks-benefits analysis based on mature medical science. This is no longer necessary.

11.

Information gained from over 225,000,000 cases of COVID-19 worldwide and a trove of highly authoritative information on a wide range of COVID-19 issues has revealed certain indisputable truths about COVID-19:

    a.    The virus is highly transmittable, spreading like wildfire around the globe despite unprecedented efforts to slow transmission;

---

[1] COVID-19 was labeled "novel" soon after the first reports of infection, and the description became a fixture for describing the disease. FEMA now describes a "Novel Pandemic" as follows: "A novel (new) virus, like Coronavirus Disease of 2019 (COVID-19), can emerge from anywhere and quickly spread around the world. It is hard to predict when or where the next novel pandemic will emerge." https://community.fema.gov/ProtectiveActions/s/article/Novel-Pandemic-When

3

  b.  The severity of symptoms and the risk of severe disease from exposure vary by patient population and is largely dependent on individual health and resiliency;

  c.  Eradication is impossible because the virus is airborne and mutates;

  d.  Immunity can be obtained naturally, by recovery from the virus, and by administration of vaccines; and

  e.  There are multiple therapeutic options.

12.

Health care provides are now able to competently inform patients about the disease and treatment options.

13.

Among the open issues concerning COVID-19 is the subject of vaccines, including the individual benefits and risks in general and as measured against, and in addition to, natural immunity. There are thousands of authoritative opinions on the subject, many directly at odds. Although many in the government apparatus may have reached a consensus regarding the benefits and risks of the vaccines, a large percentage of medical scientist and healthcare providers plainly have not. Simply put, there is a raging debate and the outcome remains uncertain.

14.

There is no one-size-fits-all recommendation for patients contemplating vaccination for COVID-19. As explained by medical commentator Dr. Marc Siegel, "'Follow the science' is an expression that has been overused and misused by politicians and the news media during the COVID pandemic, even as they jump to non-scientific conclusions." *See* "'Follow the science' is complicated when it comes to who gets a COVID vaccine and when" at https://ca.movies.yahoo.com/science-complicated-comes-gets-covid-.

15.

Blind or biased advocacy is irresponsible and threatens the fabric of the relationship between healthcare providers and patients. *See* "Coronavirus: Five Reasons Public Health Experts Have Lost Credibility," American Council on Science and Health, at https://www.acsh.org/news/2020/07/16/coronavirus-five-reasons-public-health-experts-have-lost-credibility-14915.

16.

In 2020, the United States Food and Drug Administration (FDA) granted "Emergency Use Approval" (EUA) for three COVID-19 vaccines currently available in the United States.

4

Pfizer-BioNTech (two-dose vaccine)

Moderna (two-dose vaccine)

Jansen (Johnson & Johnson, one-dose vaccine)

(Collectively, the "COVID Vaccines").[2]

17.

Early promotions about the benefits of the COVID Vaccines were overstated.

18.

First, contrary to early reports, it has been proven beyond doubt that the COVID-19 Vaccines do *not* prevent transmission of the virus. President Biden's hasty assurance earlier this year that "If you're fully vaccinated you can take your mask off" quickly unraveled after several high-profile outbreaks involving vaccinated persons. One of those outbreaks, reported by the Center for Disease Control and Prevention (CDC),[3] involved 346 fully vaccinated persons (of a total of 469), leading the CDC to issue "updated guidance" on July 27 recommending that everyone--vaccinated and unvaccinated--wear a mask in high transmission areas.[4] On August 26, the CDC issued guidance on the "delta variant," reporting that "[f]ully vaccinated people with Delta variant breakthrough infections can spread the virus to others."[5]

19.

Public officials quickly responded to CDC's call for retreat on claiming vaccines prevent transmissions. On August 2, 2021, Louisiana Governor Jon Bel Edwards re-instituted a mask mandate in Louisiana. At the new conference, the Governor emphasized that the COVID Vaccines do not prevent transmission, stating: "Based on recent CDC data, vaccinated people who do get infected have just as much virus in their systems as unvaccinated people, meaning they can likely spread the virus simply because of the power of the delta variant." The Governor's top health

---

[2] On August 23, 2021, the FDA granted full approval of the Pfizer-Comirnaty vaccine marketed in Europe, and declared it "interchangeable" with the Pfizer-BioNTech marketed in the U.S. Pfizer-BioNTech, itself, has not been fully approved and continues under the EUA designation. It is not clear how the Pfizer-Comirnaty "full approve" actually impacts the Pfizer-BioNTech EUA designation *See* https://www.washingtonpost.com/politics/2021/08/30/false-claim-that-fully-approved-pfizer-vaccine-lacks-liability-protection/

[3] *See* "Outbreak of SARS-CoV-2 Infections, Including COVID-19 Vaccine Breakthrough Infections, Associated with Large Public Gatherings — Barnstable County, Massachusetts, July 2021 (CDC)," https://www.cdc.gov/mmwr/volumes/70/wr/mm7031e2.htm?s_cid=mm7031e2_w

[4] *See* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated-guidance.html

[5] *See* https://www.cdc.gov/coronavirus/2019-ncov/variants/delta-variant.html

5

advisor, Dr. Joseph Kanter, added: "[I]f you are fully vaccinated and do become infected, then you can still relatively transmit the virus" and that "you will have just as much virus in your body as the early days of the pandemic as someone who was unvaccinated."[6]

20.

Second, early reports about the efficacy and durability of the COVID-19 Vaccines have been called into question.[7] By most accounts, it appears the vaccines may not be as effective as originally promoted and that "booster" shots will be needed to reinforce durability. *See* "Pfizer's CEO says Covid vaccine effectiveness drops to 84% after six months," at https://www.cnbc.com/2021/07/28/pfizers-ceo-says-covid-vaccine-effectiveness-drops-to-84percent-after-six-months.html; "Moderna says a study showed falling COVID-19 immunity over time and a need for boosters - even though most 'breakthrough' infections weren't severe," https://www.msn.com/en-us/health/medical/moderna-says-a-study-showed-falling-covid-19-immunity-over-time-and-a-need-for-boosters-even-though-most-breakthrough-infections-werent-severe/ar-AAOvzNi?li=BBnb7Kz. *See also* "Some vaccines last a lifetime. Here's why COVID-19 vaccines don't," at https://www.wsj.com/articles/some-vaccines-last-a-lifetime-heres-why-covid-19-shots-dont-11631266201.

21.

Additionally, several studies indicate that natural immunity may provide superior protection than the COVID-19 Vaccines, contrary to earlier reports. Early last month, the CDC reported that a study from Kentucky involving 246 patients demonstrated that vaccinated patients are 2.34 times *less* likely to be reinfected than previously infected persons with natural immunity. *See* https://www.cdc.gov/media/releases/2021/s0806-vaccination-protection.html.

22.

However, two weeks later, a study from Israel involving 74,000 cases reported just the opposite, that "natural immunity confers longer lasting and stronger protection against infection, symptomatic disease and hospitalization caused by the Delta variant of SARS-CoV-2, compared

---

[6] *See Gov. Edwards Press Conference* 08/02/2021, LOUISIANA PUBLIC BROADCASTING (AUGUST 2, 2021), https://www.youtube.com/watch?v=UzxWZ8qe0oU.

[7] *See* "COVID-19 vaccine effectiveness changing with Delta predominance" at https://medicalxpress.com/news/2021-09-covid-vaccine-effectiveness-delta-predominance.html;

6

to the BNT162b2 two-dose vaccine-induced immunity."[8] https://www.medrxiv.org/content/10.1101/2021.08.24.21262415v1. According to the Israeli study, a person with natural immunity is 27 times less likely to be reinfected than a vaccinated person.

23.

In addition, a recent study by Rockefeller University supports that natural immunity has superior durability when comparing "memory B" cells produced in response to both infection and the vaccines. As explained by Dr. Michel C. Nussenzweig, Senior Physician Investigator at the Howard Hughes Medical Institute: "Vaccination produces greater amounts of circulating antibodies than natural infection. But [the Rockefeller] study suggest that not all memory B cells are created equal. While vaccination gives rise to memory B cells that evolve over a few weeks, natural infection births memory B cells that continue to evolve over several months, producing highly potent antibodies adept at eliminating even viral variants." *See* https://www.rockefeller.edu/news/30919-natural-infection-versus-vaccination-differences-in-covid-antibody-responses-emerge/.[9]

24.

The CDC's remarkably ambivalence on this emerging data has led to harsh criticism in the medical community. See "Covid Confusion at the CDC" at https://www.wsj.com/articles/covid-19-coronavirus-breakthrough-vaccine-natural-immunity-cdc-fauci-biden-failure-11631548306

25.

In terms of benefits, the spectrum for vaccines involves "three tiers" as recently explained in The Wall Street Journal article titled "Some vaccines last a lifetime. Here's why COVID-19 vaccines don't":

> The goal of a vaccine is to provide the protection afforded by natural infection, but without the risk of serious illness or death. "A really good vaccine makes it so someone does not get infected even if they are exposed to the virus," said Rustom Antia, a biology professor at Emory University who studies immune responses. "But not all vaccines are ideal." The three tiers of defense, he said include full protection against infection and

---

[8] Sivian Gazit, Roei Shlezinger, *et al., Comparing SARS-CoV-2 natural immunity to vaccine-induced immunity: reinfections versus breakthrough infections,* MEDRXIV (Aug. 30, 2021), https://www.medrxiv.org/content/10.1101/2021.08.24.21262415v1.

[9] A number of earlier reports lend support to the argument that natural immunity may be the better option. *See* https://www.precisionvaccinations.com/natural-immunity-after-covid-19-found-durable-and-robust; https://www.nih.gov/news-events/nih-research-matters/lasting-immunity-found-after-recovery-covid-19

7

transmission; protection against serious illness and transmission; or protection against serious illness only.[10]

26.

Initial reports placed the COVID Vaccines in the middle tier—protection against serious illness and transmission. But it is now clear these vaccines belong in the lower tier—protection against serious illness only.

27.

On the other side of the scale, the COVID Vaccines, like all vaccines, pose certain risks that vary from patient to patient depending on many factors. Most are non-life threating and considered mild; but some are severe. Percentages of outcomes are misleading, because the risk of an adverse reaction is always 100% for the unfortunate patient who draws the unlucky number.

28.

In 1990, Congress created the Vaccine Adverse Events Reporting System (VAERS) to track reports of adverse reactions resulting from vaccination. According to VAERS, the reports of adverse reactions to the COVID Vaccines *in only eight months* is disproportionately higher than for all other vaccines since 1990:

https://wonder.cdc.gov/vaers.html

| Event | COVID-19 Vaccine | All other vaccines | TOTAL | Covid-19 Vaccine contributes to X percentage of total events |
|---|---|---|---|---|
| Total Adverse Events | 487,724 | 954,341 | 1,442,065 | 33.82% |
| Deaths | 6,177 | 8,913 | 15,090 | 40.93% |
| Life Threatening | 7,929 | 14,474 | 22,403 | 35.39% |
| Hospitalizations | 28,067 | 58,771 | 86,838 | 32.32% |
| Permanent Disabilities | 7,107 | 15,874 | 22,981 | 30.93% |
| Office Visits | 94,378 | 51,223 | 145,601 | 64.82% |
| ER Visits | 64,542 | 292,682 | 357,224 | 18.07% |

29.

VAERS provides important information regarding the risks of vaccinations by giving perspective to boilerplate language like "safe and effective, with rare side effects," as assured by Ochsner regarding the COVID Vaccines.

---

[10] https://www.wsj.com/articles/some-vaccines-last-a-lifetime-heres-why-covid-19-shots-dont-11631266201

8

30.

Regarding vaccination of children under the age of 18, the debate is even more cantankerous. Recently, Dr. Martin Kulldorff, Harvard professor and world-renowned epidemiologist, emphatically stated that children should not get vaccinated with regard to COVID-19.[11]

31.

The rights of parents to the companionship, care, custody and management of their children is a fundamental liberty interest warranting great deference and [vigilant] protection under the law. Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). State in Interest of Three Minor Children, 558 So.2d 1238 (La. App. 1990)

32.

Whether or not to vaccinate for COVID-19 is a personal decision, and is a paramount right of a parent to determine for their child, and not a matter to be decided by a private entity entangled in public policy.

**COUNT I – BATTERY OF A MINOR**

33.

Plaintiff, ▓▓▓▓▓▓▓▓▓▓ 16 years of age at the time of the actions alleged herein. As a minor, he does not have the legal capacity to consent to the shot administered by Defendant, Ochsner.

34.

In administering a foreign substance into the body of a minor without his legal consent, Ochsner has committed the intentional tort of batter and is liable to Plaintiff, ▓▓▓▓▓▓ said tort.

35.

Upon information and belief, Defendant, Jefferson Parish School Board, entered into a contract with Defendant, Ochsner, for the purpose of administering COVID-19 shots to minor children.

---

[11] https://www.theepochtimes.com/children-shouldnt-get-covid-19-vaccines-kulldorff_4069255.html

9

36.

It is alleged that Defendant, Jefferson Parish School Board, failed to ensure that Defendant, Ochsner, would adhere to applicable law regarding obtaining consent from the parents of minor children prior to administering COVID-19 shots on the campus of East Jefferson High School, and as such, Defendant, Jefferson Parish School Board is liable to Plaintiff, ▮▮▮▮▮▮ for the tort of battery.

37.

It is further alleged that Defendant, East Jefferson High School, through it administrators, failed to take proper precautions and/or implement proper procedures in order to protect minor children in its custody and control from being administered the COVID-19 shots without proper parental consent and therefore, Defendant, East Jefferson High School is liable to Plaintiff, ▮▮▮▮▮▮ for the tort of battery.

## COUNT II – INFLICTION OF EMOTIONAL DISTRESS

38.

Prior to administering the COVID-19 shot, none of the defendants herein made any attempt to contact Plaintiff, Jennifer Ravain, to seek permission for the administration of the shot to her minor child, Plaintiff ▮▮▮▮▮▮

39.

Defendants knew that on the time and date alleged herein that Plaintiff, ▮▮▮▮▮▮ was at all times a minor, and that they were legally obligated to obtain the consent of Plaintiff, Jennifer Ravain, but failed to do so.

40.

Defendant, Ochsner Medical Center – Kenner, L.L.C., based on the widely available scientific data, and because of their position as a health care provider, knew of the inherent risks that the COVID-19 shots posed to young healthy males such as Plaintiff, ▮▮▮▮▮▮ and failed to obtain the consent of Plaintiff, Jennifer Ravain, thereby inflicting extreme emotional distress to Plaintiff, Jennifer Ravain.

## DAMAGES

41.

As a result of the intentional and/or negligent actions of Defendants: Ochsner Medical Center – Kenner, L.L.C.; Jefferson Parish School Board; and, East Jefferson High School, Plaintiffs, ▓▓▓▓ and Jennifer Ravain have and/or will suffer the following damages:

*Jennifer Ravain*

a. Loss of Parental Right to Direct the medical care of her minor child as an unwanted substance has been injected into her son and cannot be removed;

b. Past, present and future emotional distress over the fear of possible side effects and adverse events to her son associated with widely observable scientific data as it relates to COVID-19 shots; and,

c. Punitive damages for the intentional and egregious actions of representatives of Defendant, Ochsner Medical Center – Kenner, L.L.C. in not obtaining parental consent to administer the COVID-19 shot to a minor in derogation of the law of the State of Louisiana.

▓▓▓▓

a. Past, present and future emotional distress caused by the battery of being administered a COVID-19 shot without legal consent; and,

b. Past, present and future emotional distress of the fear of possible side effects and adverse events associated with widely observable scientific data as it relates to COVID-19 shots.

WHEREFORE, Plaintiffs pray that the Defendant named herein be served with a copy of this Petition and be cited to appear and answer it, and that after due proceedings had, there be Judgment for Plaintiffs and against Defendants named herein.

PLAINTIFFS FURTHER PRAY for all legal interest from date of judicial demand until paid, for all costs of these proceedings, all expert witness fees and costs of medical reports, and all other just an equitable relief to which Plaintiffs are entitled.

Respectfully submitted:
LAW OFFICE OF G. SHELLY MATURIN, II, L.L.C.

By: *[signature]*
G. SHELLY MATURIN, II (LA. #26994)
[shelly@maturinlaw.com]
322 Heymann Blvd., Suite 1
Lafayette, Louisiana 70503
Telephone:  337-362-3514
Facsimile:  337-362-3515
*Counsel for Plaintiffs, Jennifer Ravain, individually, and on behalf of her minor child* ▮

**Please serve the Defendant as follows:**

*Ochsner Medical Center – Kenner, L.L.C.*
Through its agent for service of process:
CT Corporation System
3867 Plaza Tower Dr.
Baton Rouge, LA 70816

CK# 103
$39.30 EBR

*Jefferson Parish School Board*
Through Dr. James Gray, Superintendent:
501 Manhattan Blvd.
Harvey, LA 70058

*East Jefferson High School*
Through Mr. Benjamin Moscona, Principal:
400 Phlox Ave.
Metairie, LA 70001



**MATURIN LAW**

G. Shelly Maturin, II
322 Heymann Boulevard, Suite 1, Lafayette, Louisiana 70503
PHONE: 337-362-3514 FAX: 337-362-3515

<u>Via U.S. Mail</u>

November 3, 2021

Honorable Jon A. Gegenheimer
Clerk of Court
24th Judicial District, Jefferson Parish
Thomas F. Donelon Courthouse
200 Derbigny St., Suite 2400
Gretna, Louisiana 70053

*Re: Jennifer Ravain, individually, and on behalf of her minor child, ▓▓▓▓ v. Ochsner Medical Center Kenner, L.L.C., et al*
   *Docket No.: _____ ; 24th JDC; Div. _____*
   *Our File No.: 00020-2021*

Dear Clerk:

Enclosed, please find the original ***Petition for Damages and Request for Notice*** as well as my firm check in the amount of $580.00 made payable to the 24th Judicial District Clerk of Court representing payment for the filing of said petition as well as my firm check in the amount of $39.36 made payable to East Baton Rouge Sheriff's Office for service. I would ask that you please file the suit in the record and serve according to the instructions thereon. <u>Finally, please send my office a conformed copy.</u>

Should you need any additional information, please do not hesitate to contact me.

Sincerely,

G. Shelly Maturin, II
Attorney at Law

Enclosures

FILED FOR RECORD 11/15/2021 14:36:11
Angela P. Ingraffia, DY CLERK
JEFFERSON PARISH, LA



U.S. POSTAGE PAID
FC PKG RTL
YOUNGSVILLE, LA
70592
NOV 04, 21
AMOUNT
$4.30
R2304M110142-03

Law Office of G. Shelly Maturin, II, L.L.C.
322 Heymann Blvd., Suite 1
Lafayette, LA 70503

Honorable Jon A. Gegenheimer
Clerk of Court
24th Judicial District, Jefferson Parish
200 Derbigny St., Suite 2400
Gretna, LA 70053

USPS TRACKING® #



9500 1141 6917 1308 5097 25

**Angela P. Ingraffia**

| | |
|---|---|
| From: | G. Shelly Maturin II <shelly@maturinlaw.com> |
| Sent: | Monday, November 15, 2021 3:02 PM |
| To: | Angela P. Ingraffia |
| Subject: | RE: 822-804 L |

**CAUTION:** This email originated from outside your organization. Exercise caution when opening attachments or on clicking links from unknown senders.

Thank you very much. I don't have jeffnet. Is it something I can get on your website?

---

**From:** Angela P. Ingraffia <aingraffia@jpclerkofcourt.us>
**Sent:** Monday, November 15, 2021 2:50 PM
**To:** G. Shelly Maturin II <shelly@maturinlaw.com>
**Subject:** 822-804 L

Good afternoon, and have received your petition for damages in the case of JENNIFER RAVAIN ETAL VERSUS OCHSNER MEDICAL CENTER ET AL, we need a civil cover sheet to be filed into the suit. You can mail it in, bring it in, or if you have jeffnet you can e-file it into the system. You can go on our website www.jpclerkofcourt.us and look for the civil case reporting form. If you have any questions please feel free to contact me at 504-364-2967 or you can respond to this email.

**\*PLEASE CONFIRM RECEIPT OF THIS EMAIL TO AVOID A COURTESY CALL\***

THANKS,

**Angela P. Ingraffia**
*Deputy Clerk of Court*
*24th JDC Civil New Suits*
*Jefferson Parish Clerk of Court*
Thomas F. Donelon Courthouse
200 Derbigny St. Ste. 2400
Gretna LA 70053
Phone: (504) 364-2967
Fax: (504) 364-3780



Please be advised that any information provided to the Jefferson Parish Clerk of Court may be subject to disclosure under the Louisiana Public Records Law. Information contained in any correspondence, regardless of its source, may be a public record subject to public inspection and reproduction in accordance with the Louisiana Public Records Law, La. Rev. Stat. 44:1 et seq.

This message is intended only for the use of the individual or entity to which it is addressed. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the sender of this e-mail or by telephone.

This message is intended only for the use of the individual or entity to which it is addressed. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the sender of this E-Mail or by telephone.

1