UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JENNIFER RAVAIN, INDIVIDUALLY AND ON BEHALF OF HER MINOR CHILD, J.R. | CIVIL ACTION NO. 2:21-CV-02365 |
| VERSUS | JUDGE JAY C. ZAINEY |
| OCHSNER MEDICAL CENTER KENNER, LLC, JEFFERSON PARISH SCHOOL BOARD, AND EAST JEFFERSON HIGH SCHOOL | MAGISTRATE JUDGE KAREN WELLS ROBY |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

The United States Congress has enacted a law that protects those who administer vaccines (including those who sponsor vaccination programs), from all liability, unless they engage in willful misconduct that results in substantial bodily harm or death. This law – the Public Readiness and Emergency Preparedness Act ("PREP Act") – mandates dismissal of the plaintiff's claims because they fall squarely within the scope of that immunity. Ochsner Medical Center Kenner, LLC ("Ochsner") urges the Court to grant the motion and dismiss all claims asserted in this matter.

I.  **THE PLAINTIFF'S ALLEGATIONS AND CLAIMS**[1]

The following allegations are contained in the plaintiff's petition for damages and must be accepted as true for the purpose of Ochsner's motion.[2]

The named plaintiff, Jennifer Ravain, has sued on behalf of herself and her minor son, J.R.[3] She has named three defendants: Ochsner Medical Center Kenner, LLC ("Ochsner");

---

[1] In accordance with Rule 5.2 of the Federal Rules of Civil Procedure, the plaintiff's minor son is identified solely by his initials.

[2] Ochsner reserves its right to oppose the plaintiff's claims and allegations, should this matter survive the instant motion.

Jefferson Parish School Board ("JPSB"); and East Jefferson High School ("EJHS").[4] On October 20, 2021, J.R. allowed Ochsner to administer a COVID-19 vaccination to him[5] while he attended classes at EJHS.[6] The plaintiff does not claim that the vaccine was administered over J.R.'s objection; to the contrary, she claims that he responded to an *offer* of a COVID-19 vaccination: "On the morning of October 20, 2021. . . an 'all call' went out over the PA system inviting students to go to the Ochsner mobile vaccine unit ***if they wanted to receive a COVID shot***."[7] The plaintiff's complaint is that she did not have the opportunity to refuse the vaccine on her son's behalf. She describes her damages as "Loss of Parental Right to Direct the medical care of her minor child as an unwanted substance has been injected into her son and cannot be removed."[8]

Paragraphs 7 through 32 of the Petition present the plaintiff's reasoning for why she would have preferred that her son not receive the COVID-19 vaccine. These paragraphs include discussions of Louisiana law,[9] as well as "indisputable truths" about COVID-19,[10] a "raging debate"[11] that sometimes gets "cantankerous,"[12] the numerous reasons that she would have

---

[3] Rec. Doc. 1-1 ("Petition"), at 1 ¶ 1.

[4] Id., ¶ 2.

[5] Id. at 2, ¶ 6.

[6] Id., ¶ 4.

[7] Id., ¶ 4. (emphasis added).

[8] Id. at 11, ¶ 41.

[9] *See* Petition, at 2-3, 9, ¶¶ 7-9, 31.

[10] Id. at 3-4, ¶ 11.

[11] Id. at 4, ¶ 13.

[12] Id. at 9, ¶ 30.

preferred her son to acquire "natural immunity,"[13] and the conclusion the plaintiff has reached that "[t]his is no longer necessary."[14]

The plaintiff claims that she has suffered the following damages, which she is claiming on behalf of herself and her son:

> Plaintiffs, [J.R.], and Jennifer Ravain have and/or will suffer the following damages:
>
> ***Jennifer Ravain***:
>
> a.  Loss of Parental Right to Direct the medical care of her minor child as an unwanted substance has been injected into her son and cannot be removed;
>
> b.  Past, present and future emotional distress over the fear of possible side effects and adverse events to her son associated with widely observable scientific data as it relates to COVID-19 shots; and
>
> c.  Punitive damages for the intentional and egregious actions of representatives of Defendant, Ochsner Medical Center - Kenner, LLC in not obtaining parental consent to administer the COVID-19 shot to a minor in derogation of the law of the State of Louisiana.
>
> ***[J.R.]:***
>
> a.  Past, present and future emotional distress caused by the battery of being administered a COVID-19 show without legal consent; and
>
> b.  Past, present and future emotional distress of the fear of possible side effects and adverse events associated with widely observable scientific data as it relates to COVID-19 shots.[15]

There is not a single mention of any bodily injury whatsoever in the plaintiff's petition.

---

[13] Id. at 4-9, ¶¶ 12-30

[14] Id. at 3, ¶ 10.

[15] Petition, at 11, ¶ 41.

## II.   STANDARDS OF PROOF

This Court is familiar with the standards that apply to Rule 12(b)(6) motions to dismiss.

> In the context of a motion to dismiss the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. . . .
>
> The central issue in a Rule 12(b)(6) motion to dismiss is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. []  To avoid dismissal, a plaintiff must plead sufficient facts to "state a claim for relief that is plausible on its face." [] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." []   The Court does not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions."  Legal conclusions must be supported by factual allegations.[16]

## III.   PREP ACT IMMUNITY FROM *SUIT*

The PREP Act was enacted by Congress and took effect on December 30, 2005.[17] Congress purposefully created a legal framework by which individuals, companies, and organizations (public and private) are encouraged to participate in efforts to protect public health when an emergency is underway.   This encouragement takes the form of immunity from *both suit and liability* under all but the most extreme circumstances.  Immunity from suit means that the claims against the defendants should be dismissed at the earliest opportunity.[18]

---

[16] Dickie Brennan & Company v. Zurich American Insurance Company, 2021 U.S. Dist. LEXIS 245191, 2021 WL 6061917, *3-4 (E.D.La. 12/20/21) (Zainey, J.) (citations omitted).

[17] P.L. 109-148, 119 Stat. 2818.

[18] Denial of a claim of immunity from suit is immediately appealable because "it is effectively lost if a case is erroneously permitted to go to trial."  Smith v. Davis, 507 Fed.Appx. 359, 361 (5th Cir. 2013), *citing* Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

### A.   The PREP Act

The PREP Act begins by declaring that it creates immunity from suit and liability for individuals participating in the administration of "countermeasures" to a public disease or condition that has created a public health emergency:

> Subject to the other provisions of this section, *a covered person shall be immune from suit and liability* under Federal and State law with respect to *all claims for loss* caused by, arising out of, relating to, or resulting from *the administration to or the use by an individual of a covered countermeasure* if a *declaration under subsection (b)* has been issued with respect to such countermeasure.[19]

Thus, the elements that must exist for PREP Act immunity to apply are:

(a) The named defendants are "covered persons";

(b) The claims asserted reflect "losses" that fall within the scope of the immunity granted;

(c) The Secretary has issued a "declaration"; and

(d) The defendants are accused of participating in the administration of a "covered countermeasure."

### 1.   *"Covered Persons"*

This immunity applies to "covered persons." Under the PREP Act, the named defendants (except for EJHS, which is not a juridical person of any type) fall into the category of "covered persons":

> The term "*covered person*", when used with respect to the administration or use of a covered countermeasure, means–
>
> (A) the United States; or
>
> (B) a person or entity that is–
>
>   (i)   a manufacturer of such countermeasure;

---

[19] 42 U.S.C. § 247d-6d(a)(1) (emphasis added).

>   (ii)   a distributor of such countermeasure;
>
>   (iii)  a ***program planner** of such countermeasure*;
>
>   (iv)   a ***qualified person** who prescribed, administered, or dispensed such countermeasure*; or
>
>   (v)    an official, agent, or employee of a person or entity described in clause (i), (ii), (iii), or (iv).[20]

The named defendants in this case fall into two of the sub-categories of covered person, *i.e.*, qualified person and program planner. Ochsner is a "*qualified person*" because it is a health care provider that is accused of administering the vaccination of which the plaintiff complains:

> The term "*qualified person*", when used with respect to the administration or use of a covered countermeasure, means–
>
> **(A)**  a *licensed health professional* or other individual who is *authorized to prescribe, administer, or dispense such countermeasures* under the law of the State in which the countermeasure was prescribed, administered, or dispensed. . . .[21]

The Jefferson Parish School Board, on the other hand, is a "*program planner*":[22]

> The term "***program planner***" means a ***State or local government***, including an Indian tribe, a person employed by the State or local government, ***or other person who supervised or administered a program with respect to the administration, dispensing, distribution, provision, or use of*** a security countermeasure or ***a qualified pandemic or epidemic product***, including a person who has established requirements, provided policy guidance, or supplied technical or scientific advice or assistance or ***provides a facility to administer or use a covered countermeasure in accordance with a declaration under subsection (b)***.[23]

---

[20] 42 U.S.C. § 247d-6d(i)(2) (emphasis added).

[21] 42 U.S.C. § 247d-6d (i)(8) (emphasis added).

[22] EJHS would also be a "program planner" if it were a juridical person.

[23] 42 U.S.C. § 247d-6d (i)(6) (emphasis added).

2. *"Loss"*

PREP Act immunity applies to "*losses*," that specifically include the types of damages claimed by the plaintiff on behalf of herself and her son:

> For purposes of this section, the term "*loss*" means any type of loss, including . . .
>
> (i) death;
>
> (i) physical, **mental, or emotional injury**, illness, disability, or condition;
>
> (iii) ***fear of physical, mental, or emotional injury, illness, disability, or condition***, including any need for medical monitoring. . . .[24]

3. *"Declaration"*

The immunity created by the PREP Act only applies if there has been a declaration by the Secretary of the Department of Health and Human Services that there is a public health emergency:

> Subject to paragraph (2), ***if the Secretary makes a determination that a disease or other health condition or other threat to health constitutes a public health emergency***, or that there is a credible risk that the disease, condition, or threat may in the future constitute such an emergency, ***the Secretary may make a declaration, through publication in the Federal Register, recommending, under conditions as the Secretary may specify, the manufacture, testing, development, distribution, administration, or use of one or more covered countermeasures***, and stating that subsection (a) is in effect with respect to the activities so recommended.[25]

4. *"Covered countermeasures"*

A "*covered countermeasure*" means:

---

[24] 42 U.S.C. § 247d-6d(a)(1) (emphasis added).

[25] 42 U.S.C. § 247d-6d (b)(1) (emphasis added).

> **(A)** a qualified pandemic or epidemic product (as defined in paragraph (7));
>
> **(B)** a security countermeasure (as defined in section 319F-2(c)(1)(B) [42 USCS § 247d-6b(c)(1)(B)]);
>
> **(C)** *a* drug (as such term is defined in section 201(g)(1) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 321(g)(1)), ***biological product (as such term is defined by section 351(i) of this Act [42 USCS § 262(i)]),*** or device (as such term is defined by section 201(h) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. 321(h)) that is authorized for emergency use in accordance with section 564, 564A, or 564B of the Federal Food, Drug, and Cosmetic Act [21 USCS § 360bbb-3, 360bbb-3a, or 360bbb-3b]; or
>
> **(D)** a respiratory protective device that is approved by the National Institute for Occupational Safety and Health under part 84 of title 42, Code of Federal Regulations (or any successor regulations), and that the Secretary determines to be a priority for use during a public health emergency declared under section 319 [42 USCS § 247d].[26]

The "*biological products*" described in Paragraph C above, include vaccines:

> The term "***biological product***" ***means*** a virus, therapeutic serum, toxin, antitoxin, ***vaccine***, blood, blood component or derivative, allergenic product, protein, or analogous product, or arsphenamine or derivative of arsphenamine (or any other trivalent organic arsenic compound), applicable to the prevention, treatment, or cure of a disease or condition of human beings.[27]

> 5. *Scope of Immunity*

When the requirements for immunity are met, the *scope of the immunity* provided by the PREP Act is extremely broad:

> The immunity under paragraph (1) applies to ***any claim for loss*** that has a ***causal relationship with the administration to or use by an individual of a covered countermeasure***, including a causal relationship with the design, development, clinical testing or

---

[26] 42 U.S.C. § 247d-6d(i)(1).

[27] 42 U.S.C. § 262(i)(1).

{L0635295.1}   8

> investigation, manufacture, labeling, distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, ***administration***, licensing, or ***use of such countermeasure***.[28]

### 6. *The Sole Exception*

Having established this broad-ranging immunity for those engaged in the effort to combat threats to public health, the PREP Act nonetheless does create a very clear exception to that immunity. Specifically, the PREP Act allows for certain types of claims when there has been serious physical injury or death:

> Subject to subsection (f), ***the sole exception to the immunity from suit and liability of covered persons set forth in subsection (a) shall be for an exclusive Federal cause of action against a covered person for <u>death</u> or <u>serious physical injury</u> proximately caused by willful misconduct***, as defined pursuant to subsection (c), by such covered person.[29]

"*Serious physical injury*" means what it says:

> The term "serious physical injury" means an injury that—
>
> **(A)** is ***life threatening***;
>
> **(B)** results in ***permanent impairment*** of a body function or ***permanent damage*** to a body structure; or
>
> **(C)** necessitates ***medical or surgical intervention*** to preclude permanent impairment of a body function or permanent damage to a body structure.[30]

Any claim brought under this exception must be asserted in the United States District Court for the District of Columbia.[31]

---

[28] 42 U.S.C. § 247d-6d(a)(2)(B) (emphasis added).

[29] 42 U.S.C. § 247d-6d(d)(1) (emphasis added).

[30] 42 U.S.C. § 247d-6d(i)(10).

[31] "Any action under subsection (d) shall be filed and maintained only in the United States District Court for the District of Columbia." 42 U.S.C. § 247d-6d(e)(1).

### B.    The Secretary's Declaration

Pursuant to Paragraph (b) of the PREP Act, the Secretary of the Department of Health and Human Services ("Secretary") issued a Declaration Under the Public Readiness and Emergency Preparedness Act for Medical Countermeasures Against COVID-19 on March 17, 2020.[32]  The Declaration includes the following provisions:

- He determined that the spread of ***SARS-CoV-2 constitutes a public health emergency***;

- He recommended the manufacture, testing, development, distribution, ***administration, and use of covered countermeasures***;

- He identified the "covered countermeasures" as: any antiviral, any other drug, any biologic, any diagnostic, any other device, or any ***vaccine***, used to treat, diagnose, cure, prevent, or mitigate COVID-19. . . .

- He set the applicable time period as March, 2020 through October 1, 2024.[33]

Thus, the foundational prerequisite for the application of PREP Act immunity has been in place at all times relevant to the plaintiff's claims.

### C.    *PREP Act Immunity Applies to the Plaintiff's Claims*

The plaintiff's allegations establish all of the non-public elements required for PREP Act immunity to apply to the claims in this matter.  The plaintiff alleges that her son was administered a COVID-19 vaccination.[34]  The vaccine was administered by nurses employed by Ochsner,[35] and pursuant to a program planned by the JPSB through its employees at the EJHS.[36]  The plaintiff has asserted claims for battery and infliction of emotional distress, both of which

---

[32] 85 FR 15198 (March 17, 2020).  The Declaration has been amended several times, but not in any way that affects its application to this case.

[33] Id. at 15201-02.

[34] Petition, at 2, ¶6.

[35] Petition, at 2, ¶ 6.

[36] Id. at 9-10, ¶¶ 35-37.

are linked directly to the administration of a vaccine to the minor.[37] The damages asserted consist exclusively of emotional distress.[38] There is no hint of any physical injury whatsoever, much less serious bodily injury or death. While the petition does not mention the Secretary's declaration pursuant to the PREP Act, the Court is required to take judicial notice of publications in the federal register,[39] so the Declaration may be considered in the context of a Rule 12(b)(6) motion.[40]

A plaintiff asserting a claim is required to demonstrate that her claim has facial plausibility, meaning that the facts alleged allow the Court to draw the reasonable inference that the defendants are liable for the misconduct alleged. The plaintiff has asserted claims for alleged emotional damages, resulting from the administration of a COVID-19 vaccine to her son. The acts alleged against the defendants and the damages claimed by the plaintiff all squarely into the scope of the immunity from suit established by the PREP Act. Moreover, there is no hint that either the plaintiff or her son has endured any bodily injury whatsoever, much less serious injury or death. For this reason there is no plausible claim that could fall within the scope of the exception to PREP Act immunity.

## CONCLUSION

Ochsner has demonstrated that the plaintiff has not alleged any claim that falls outside of PREP Act immunity from suit. Under the facts as alleged by the plaintiff, the defendants are entitled to dismissal of all claims against them.

---

[37] Id. at 9-10, ¶¶ 33-40.

[38] Id. at 11, ¶ 41.

[39] See 44 U.S.C. § 1507 ("The contents of the Federal Register shall be judicially noticed and without prejudice to any other mode of citation, may be cited by volume and page number.").

[40] See, e.g., Wolcott v. Sebelius, 635 F.3d 757, 763 (5th Cir. 2011).

Respectfully submitted,

**JONES WALKER LLP**

*s/ Nadia de la Houssaye*
Nadia de la Houssaye (24777)
Carmen M. Rodriguez (22573)
600 Jefferson St., Suite 1600
Lafayette, Louisiana 70502-3408
Telephone: (337) 593-7600
Facsimile: (337) 593-7601
Email: ndelahoussaye@joneswalker.com
Email: carmenrodriguez@joneswalker.com

*Counsel for Defendant, Ochsner Medical Center Kenner, LLC ("Ochsner")*

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2022, a copy of the foregoing pleading was filed electronically with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by CM/ECF, email or U.S. mail.

*s/ Nadia de la Houssaye*
Nadia de la Houssaye